STATE OF NORTH CAROLINA v. RONALD LEE ROACH, DEFENDANT

No. COA00-687

(Filed 17 July 2001)

**Motor Vehicles— driving while impaired—Intoxilyzer test results—appreciably impaired prong**

The trial court erred in a driving while impaired case by admitting the Intoxilyzer test results, because: (1) a proper foundation was not laid before admitting evidence as to the outcome of the chemical analysis test when the arresting officer did not testify at trial that he possessed a permit issued by the Department of Health and Human Services as required by N.C.G.S. § 20-139.1; and (2) even though there was sufficient evidence to convict defendant under the appreciably impaired prong of the driving while impaired statute under N.C.G.S. § 20-138.1(a)(1), it is not possible to tell whether the jury found defendant guilty based on his blood alcohol concentration level or due to the appreciable impairment of his faculties.

Appeal by defendant from judgment entered 2 February 2000 by Judge Robert P. Johnston in Superior Court, Mecklenburg County. Heard in the Court of Appeals 15 May 2001.

*Attorney General Michael F. Easley, by Special Deputy Attorney General, Isaac T. Avery, III, and Assistant Attorney General Patricia A. Duffy, for the State.*

*Ledford & Murray, P.C., by Joseph L. Ledford, for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Ronald Lee Roach ("defendant") was stopped at a driver's license check point on the morning of 27 June 1998 by Trooper James R. Pickard, III, ("Trooper Pickard" or "trooper"), a member of the North Carolina Highway Patrol. Trooper Pickard asked defendant to produce his driver's license and registration card as required for the license check. While defendant was acquiring the license and registration, however, Trooper Pickard noticed that defendant's eyes appeared bloodshot and glassy and that a "strong odor" of alcohol was emanating from defendant's automobile. Trooper Pickard asked defendant to pull his car over to the side of the road and to get out of the car. Defendant followed the instructions, after which Trooper

STATE v. ROACH

[145 N.C. App. 159 (2001)]

Pickard asked defendant if he had been drinking alcohol. Defendant answered that he had been drinking, but he did not indicate the quantity of alcohol he had consumed. Trooper Pickard next instructed defendant to sit in the front seat of the patrol car. Defendant complied with the instruction and the trooper again detected a "strong odor" of alcohol on defendant's breath. Consequently, in order to gauge defendant's level of inebriation, Trooper Pickard asked defendant to recite the alphabet. Defendant recited the alphabet properly until the end when, according to Trooper Pickard, defendant finished by saying "X Y R N Z." Trooper Pickard also noted that defendant's speech was "mumbled." Trooper Pickard opined that defendant was unfit to drive an automobile because he was appreciably impaired, so he arrested defendant for driving while impaired and transported him to the Charlotte/Mecklenburg Intake Center. After Trooper Pickard read defendant his legal rights, the trooper administered the Intoxilyzer test to defendant. The Intoxilyzer test registered a .09 blood alcohol percentage reading.

At trial, Trooper Pickard was called to the stand to testify on behalf of the State. Before the trooper testified as to the results of the Intoxilyzer test, defendant objected. The trial court excused the jury and overruled the objection. Thereafter the jury reentered the court room and heard Trooper Pickard testify as to his training on the Intoxilyzer 5000. After being asked the results of the Intoxilyzer test, defendant again objected and was overruled, and Trooper Pickard testified that defendant's Intoxilyzer reading was .09.

Defendant moved to dismiss the case at the conclusion of the State's evidence. This motion was denied. Defense counsel then moved to dismiss the appreciable impairment standard under the statute, which motion was also denied. Subsequently, defendant was found guilty of driving while impaired pursuant to N.C. Gen. Stat. section 20-138.1. Defendant appeals this conviction.

---

The dispositive issue on appeal is whether the trial court erred by admitting the Intoxilyzer test results into evidence. For the reasons stated below, we conclude that the trial court committed prejudicial error and defendant is entitled to a new trial.

Defendant argues that the trial court erred in admitting into evidence the Intoxilyzer results over the defendant's objection, on the basis that the State failed to lay a sufficient foundation for the introduction of the results. We agree.

An Intoxilyzer test is a chemical analysis administered to determine a defendant's blood alcohol content. *State v. Summers*, 132 N.C. App. 636, 513 S.E.2d 575 (1999). A person administering a chemical analysis test must be qualified to administer the test in order to testify as to the results. *State v. Caviness*, 7 N.C. App. 541, 173 S.E.2d 12 (1970). It is not sufficient for the State to establish that the test administrator possesses a license to conduct the test. *Id.* Instead, the State is required to show that the test administrator possesses a permit issued by the appropriate agency, *id.*, and that the officer possessed such permit at the time of the administration of the test. *State v. Franks*, 87 N.C. App. 265, 360 S.E.2d 473 (1987).

Our statutes specifically set out the Department of Health and Human Services as the only agency authorized to issue a valid permit.

> Approval of Valid Test Methods; Licensing Chemical Analysts.— A chemical analysis, to be valid, shall be performed in accordance with the provisions of this section. The chemical analysis shall be performed according to methods approved by the Commission for Health Services by an individual possessing a current permit issued by the Department of Health and Human Services for that type of chemical analysis. The Commission for Health Services may adopt rules approving satisfactory methods or techniques for performing chemical analyses, and the Department of Health and Human Services may ascertain the qualifications and competence of individuals to conduct particular chemical analyses. The Department may issue permits to conduct chemical analyses to individuals it finds qualified subject to periodic renewal, termination, and revocation of the permit in the Department's discretion.

N.C. Gen. Stat. § 20-139.1(b) (1999).

The State admits that Trooper Pickard did not testify at trial that he possessed a permit issued by the Department of Health and Human Services, but urges us to overrule the *Franks* holding as "too narrow and unduly formalistic for today's world." We cannot overrule *Franks*. See *In the Matter of Appeal from Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court"). Because so much weight and deference is given to a chemical analysis test, it is

necessary that a proper foundation be laid before admitting evidence as to the outcome of a chemical analysis test in a driving while impaired case.

"Except as provided in this subsection, a chemical analysis is not valid in any case in which it is performed by an arresting officer or by a charging officer." N.C. Gen. Stat. § 20-139.1(b1). This rule aids both in actual fairness as well as the appearance of fairness to the defendant. *State v. Jordan*, 35 N.C. App. 652, 242 S.E.2d 192 (1978). It is prejudicial error for the court to allow the arresting officer who administered a chemical analysis to testify as to the results of that analysis, even when there was other sufficient evidence in the record to support a guilty verdict. *State v. Stauffer*, 266 N.C. 358, 145 S.E.2d 917 (1966). The notable exception to N.C. Gen. Stat. section 20-139.1(b1) is that:

A chemical analysis of the breath may be performed by an arresting officer or by a charging officer when both of the following apply:

(1) The officer possesses a current permit issued by the Department of Health and Human Services for the type of chemical analysis.

(2) The officer performs the chemical analysis by using an automated instrument that prints the results of the analysis.

N.C. Gen. Stat. § 20-139.1(b1).

Trooper Pickard was the arresting officer in the case *sub judice*. A proper foundation was not laid to show whether Officer Pickard "possesse[d] a current permit issued by the Department of Health and Human Services." *Id.* The chemical analysis, then, can not fall under the aforementioned exception. Instead, the general rule applies that "a chemical analysis is not valid in any case in which it is performed by an arresting officer or by a charging officer." N.C. Gen. Stat. § 20-139.1(b1). Consequently, the admission of such evidence was error.

The State argues that even if it were error to admit the chemical analysis test results, there was sufficient evidence to convict defendant under the appreciably impaired prong of the driving while impaired statute. N.C. Gen. Stat. § 20-138.1(a)(1) (1999). The driving while impaired statute, N.C. Gen. Stat. section 20-138.1, provides that:

A person commits the offense of impaired driving if he drives any vehicle upon any highway, any street, or any public vehicular area within this State:

(1)  While under the influence of an impairing substance; or

(2)  After having consumed sufficient alcohol that he has, at any relevant time after the driving, an alcohol concentration of 0.08 or more.

N.C. Gen. Stat. § 20-138.1(a).

It is negligence *per se* and a clear violation of the criminal law for a person to operate a motor vehicle with a blood alcohol concentration of .08 or greater. *See e.g. Vance Trucking Co. v. Phillips*, 66 N.C. App. 269, 311 S.E.2d 318 (1984). However, driving while impaired may be proven under 20-138.1(a)(1) where the blood alcohol concentration is unknown or less than .08. *State v. Harrington*, 78 N.C. App. 39, 336 S.E.2d 852 (1985). Being "[u]nder the influence of an impairing substance" is defined as "[t]he state of a person having his physical or mental faculties, or both, appreciably impaired by an impairing substance." N.C. Gen. Stat. § 20-4.01(48)(b) (1999).

There is no dispute that the following testimony by Trooper Pickard was presented to the jury: Trooper Pickard detected a "strong odor of alcohol" on defendant; he noticed that defendant's eyes were bloodshot and glassy; he stated that defendant "mumbled" his words and did not accurately recite the alphabet; and Trooper Pickard testified that defendant admitted that he had been drinking. While a showing of a slight effect on defendant's faculties is insufficient for a conviction of driving while impaired, *State v. Hairr*, 244 N.C. 506, 94 S.E.2d 472 (1956), one need not be "drunk" to be found guilty. *State v. Felts*, 5 N.C. App. 499, 168 S.E.2d 483 (1969). Rather, a "noticeable," "perceptible," "obvious," "detectable" or "apparent" impairment may be sufficient to find appreciable impairment of mental and/or physical faculties. *State v. Combs*, 13 N.C. App. 195, 185 S.E.2d 8 (1971). There was sufficient evidence from which the jury could convict defendant under the appreciably impaired prong of the driving while impaired statute. N.C. Gen. Stat. § 20-138.1(a)(1). However, the jury was given only two options on the verdict sheet, to find defendant "guilty of driving while impaired" or to find defendant "not guilty." Consequently, it is not possible to tell whether the jury found defendant guilty based on his blood alcohol concentration level or due to the appreciable impairment of his faculties. The jury was not permitted to

find defendant guilty pursuant to N.C. Gen. Stat. § 20-138.1(a)(2), because the chemical analysis test was improperly admitted. Because the jury may have based their decision on the chemical analysis test results, we reverse the conviction and remand for a new trial.

Based on our decision to reverse defendant's conviction and remand for a new trial, we need not reach defendant's remaining assignment of error.

Reversed and remanded for new trial.

Judges GREENE and JOHN concur.