STATE OF NORTH CAROLINA v. JOHN KENNEDY MEADOWS, Defendant

No. COA08-1576

(Filed 5 January 2010)

**Evidence— expert testimony—chemical analyst—results of NarTest machine—reliability**

The trial court abused its discretion in a possession of cocaine and possession of drug paraphernalia case by allowing an officer to testify as an expert chemical analyst and in admitting evidence of results from a NarTest machine because it was not an accepted method of analysis or identification of controlled substances. Controlled substances defined by their chemical composition can only be identified through the use of chemical analyses and not through lay testimony based on visual inspection.

Appeal by defendant from judgment entered on or about 30 July 2008 by Judge Benjamin G. Alford in Superior Court, Onslow County. Heard in the Court of Appeals 18 August 2009.

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Anne Bleyman, for defendant-appellant.*

*Tharrington Smith, L.L.P., by Elisa J. Cyre and Roger W. Smith, for Amicus Curiae.*

STROUD, Judge.

Defendant was convicted by a jury of possession of cocaine and possession of drug paraphernalia. Defendant appeals on the grounds that the trial court erred by admitting expert testimony on the identity of a controlled substance based on the results of a NarTest machine. We find defendant's argument as to the State's failure to demonstrate the reliability of the NarTest machine to be dispositive, and we order a new trial.

I. Background

The State's evidence tended to show that on the evening of 19 May 2007, Detective Jack Edward Springs of the Onslow County Sheriff's Office was "traveling around the Belgrade area" of Onslow County when he saw "all the signs and symptoms of . . . an illegal act" on Front Lane. Detective Springs got out of his car and concealed

himself in "the hedge and darkness" in order to approach a suspicious vehicle. Defendant got out of the suspicious vehicle. Detective Springs shined his flashlight onto defendant. Defendant threw a plastic bag with white contents to the ground. The contents of the plastic bag were analyzed by Captain John Lewis of the Onslow County Sheriff's Office by using a NarTest machine, which displayed test results that the substance was crack cocaine. On or about 8 January 2008, defendant was indicted for possession with intent to manufacture, sell, and deliver cocaine, manufacturing cocaine, and possession of drug paraphernalia. Defendant was also indicted as a habitual felon. After a jury trial, defendant was convicted of possession of cocaine and possession of drug paraphernalia. Defendant was determined to have a prior felony record level of four and was sentenced to 120 to 153 months imprisonment. Defendant appeals.

## II. NarTest Machine

Defendant argues "the trial court committed error in allowing Captain Lewis to testify as an expert chemical analyst and in admitting evidence of the unproven and unreliable NarTest machine in violation of [defendant's] State and Federal Rights." (Original in all caps.) We agree. Over defendant's objection, the trial court allowed Captain Lewis to testify that the NarTest machine is "an instrument that has been designed to analyze certain controlled substances. It is technology that is available to law enforcement agencies to analyze items that they believe to contain controlled substance schedule two, both cocaine hydrochloride and cocaine base marijuana."

"[A] trial court's ruling on the qualifications of an expert or the admissibility of an expert's opinion will not be reversed on appeal absent a showing of abuse of discretion." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 458, 597 S.E.2d 674, 686 (2004) (citations omitted).

> If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.

N.C. Gen. Stat. § 8C-1, Rule 702. The Supreme Court of North Carolina enumerated a three-step analysis for the trial court to determine the admissibility of opinion testimony from an expert witness: "(1) Is the expert's proffered method of proof sufficiently reliable as an area for expert testimony? (2) Is the witness testifying at trial qualified as an

**STATE v. MEADOWS**

[201 N.C. App. 707 (2010)]

expert in that area of testimony? (3) Is the expert's testimony relevant?" *Howerton* at 458, 597 S.E.2d at 686 (citations omitted).

The trial court must first consider whether Captain Lewis's use of the NarTest machine was "sufficiently reliable as an area for expert testimony" and we must determine if the trial court abused its discretion in making such a determination. *See id.* "[T]o determine whether an expert's area of testimony is considered sufficiently reliable, a court may look to testimony by an expert specifically relating to the reliability, may take judicial notice, or may use a combination of the two." *Id.* at 459, 597 S.E.2d at 687 (citation and quotation marks omitted).

In this case, Captain Lewis did not testify as to the reliability of the NarTest machine beyond his own experience with it; in other words, Captain Lewis did not testify about the methodology used by the NarTest machine to perform its analysis, but only about how it is used. We are not aware of any cases in which the NarTest machine has been recognized as an accepted method of analysis or identification of controlled substances in North Carolina or in any other jurisdiction in the United States. We therefore cannot base any conclusions as to reliability of the NarTest machine upon Captain Lewis's testimony or judicial notice.

As the NarTest machine is a new technology which has not yet been addressed by any appellate court, our first consideration is whether the trial court abused its discretion in determining the reliability of the NarTest machine. *See Howerton* at 458, 597 S.E.2d at 686.

Where . . . the trial court is without precedential guidance or faced with novel scientific theories, unestablished techniques, or compelling new perspectives on otherwise settled theories or techniques, a different approach is required. Here, the trial court should generally focus on the following nonexclusive indices of reliability to determine whether the expert's proffered scientific or technical method of proof is sufficiently reliable: *the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked to sacrifice its independence by accepting the scientific hypotheses on faith, and independent research conducted by the expert.*

Within this general framework, reliability is thus a preliminary, foundational inquiry into the basic methodological adequacy of an area of expert testimony.

*Id.* at 460, 597 S.E.2d at 687 (emphasis added) (citation, quotation marks, and brackets omitted).

We will therefore first consider whether the NarTest machine is an "established technique[.]" *Id.* The trial court recognized Captain Lewis as a "certified chemical analyst in the use of the NarTest" machine.[1] However, Captain Lewis did not testify as to any "established techniques[.]" *Id.* Captain Lewis testified only about the NarTest machine and the operation of the machine to analyze presumably illegal substances. Captain Lewis testified that when he tests a substance which he believes to be cocaine, he mixes it with reverse osmosis water.

> It is allowed to sit in that fluid for several minutes and then you draw some of the fluid out of your test tube that is put into a cell and that is placed into the instrument and then it is begun. The instrument shines a light through it and depending on the light waves or the florescence that is received on the other side by the computer the computer determines what controlled substance it is.

"[O]nce you get your initial positive for cocaine there is one drop of reagent that is added and that is analyzed as well." The NarTest machine then prints out its results. Captain Lewis did not testify as to the specific type of testing which is done by the NarTest machine beyond stating that it uses "florescence." The State did not present any evidence which would indicate that the NarTest machine uses an "established technique[,]" *id.*, for analysis of controlled substances or that the NarTest machine has been recognized by experts in the field of chemical analysis of controlled substances as a reliable testing method.

Furthermore, Captain Lewis did not testify as to any other testing methods currently used to identify controlled substances and how the NarTest machine compares with those methods. During the trial, Captain Lewis admitted he had absolutely no evidence that the NarTest machine was even accurate beyond the fact that the NarTest laboratory confirmed his NarTest machine results. In fact, on cross-examination Captain Lewis was asked, "So, is it not fair to say that

---

1. We note that all of the prior North Carolina cases which we have been able to find which address testimony by a "certified chemical analyst" are regarding those individuals with permits from the North Carolina Department of Health and Human Services who test for "a person's alcohol concentration." *See* N.C. Gen. Stat. § 20-139.1 (2007). Captain Lewis was not recognized as a "certified chemical analyst" as the term is used in N.C. Gen. Stat. § 20-139.1.

the results are only as accurate as the testing device?" to which Captain Lewis responded, "Yes." Therefore, the State did not present any evidence that the NarTest machine or the testing methodology used by the machine is an "established technique[.]" *Id.*

Next, we must consider Captain Lewis's "professional background in the field" of identification of controlled substances. *Id.* At the time of defendant's trial Captain Lewis had worked for the Sheriff's Office for thirteen years and supervised the narcotics unit for approximately two and one-half years. Captain Lewis had also attended "basic law enforcement training[,]" OCDETF conferences, "schools dealing with informants, controlled substance investigations[,]" a five-day NarTest course, and a one-day follow-up training session on the NarTest machine. Captain Lewis has also been certified by Nartest's manufacturer to operate the NarTest machine. However, Captain Lewis was "not a chemist by trade[,]" had not attended "any college training in regard to being a chemist[,]" and was not aware of the chemical makeup of cocaine or what would occur when it was mixed with other substances.

The State argues that Captain Lewis should be permitted to testify regarding use of the NarTest machine because he was trained and certified in its use. In *State v. Roach* regarding the issue of testimony from a certified chemical analyst this Court stated:

> A person administering a chemical analysis test must be qualified to administer the test in order to testify as to the results. It is not sufficient for the State to establish that the test administrator possesses a license to conduct the test. Instead, *the State is required to show that the test administrator possesses a permit issued by the appropriate agency, and that the officer possessed such permit at the time of the administration of the test.*

*State v. Roach,* 145 N.C. App. 159, 161, 548 S.E.2d 841, 843 (2001) (emphasis added) (citations omitted). However, the NarTest machine has not been designated as an approved method of identification of controlled substances by the State of North Carolina or any agency of the State. Captain Lewis admitted that he did not possess any "permit issued by the appropriate agency" regarding the NarTest machine. *Id.* Indeed, no agency of the State of North Carolina issues any sort of certification in use of the NarTest machine. Thus, although Captain Lewis has a "professional background" in law enforcement, he has no relevant "professional background" in the field of chemical analysis of controlled substances. *Id.*

There was no evidence presented in this case as to the last two *Howerton* factors as to reliability. *See Howerton* at 460, 597 S.E.2d at 687. No "visual aids" were presented before the jury to demonstrate the use of the NarTest machine or how the machine works nor did Captain Lewis testify as to any "independent research" he had conducted regarding either identification of controlled substances or the NarTest machine. *Id.*

Although the factors as examined *supra* are not exclusive, we note that the focus of our inquiry must be the trial court's ruling on the reliability of the method of testing. *See id.* The State did not present any evidence of the reliability of the NarTest machine beyond Captain Lewis's opinion that it was reliable based upon his personal experience of using the machine and the fact that some of the test results had been confirmed by the NarTest manufacturer. Indeed, the State's evidence does not even describe the method of analysis the NarTest machine uses or how it works; the evidence is simply that you put the substance to be analyzed into the machine and the machine uses "florescence" to determine what the substance is and prints out a result. The State did not present any evidence independent of information from the NarTest's manufacturer which would establish its reliability; although such information might exist, it is not in the record before us. We cannot find that the NarTest machine is sufficiently reliable based upon the evidence presented.

As the State failed to proffer evidence to support any of the "indices of reliability" under *Howerton* or any alternative indicia of reliability, we conclude that "the expert's proffered method of proof [is not] sufficiently reliable as an area for expert testimony[.]" *Id.* at 458-60, 597 S.E.2d at 686-87. Without a "sufficiently reliable" method of proof, expert testimony was not properly admissible, and we need not address whether "the witness testifying at trial qualified as an expert in that area of testimony" and whether "the expert's testimony [was] relevant[.]" *Id.* at 458, 597 S.E.2d at 686. Accordingly, allowing Captain Lewis to testify as to the results of the NarTest machine was an abuse of discretion.

Besides Captain Lewis' testimony regarding the NarTest machine, the only other evidence the State presented that defendant was in possession of cocaine was Detective Springs' testimony that he "collected what [he] believe[d] to be crack cocaine." However, "existing precedent suggests that controlled substances defined in terms of their chemical composition can only be identified through the use of

a chemical analysis rather than through the use of lay testimony based on visual inspection." *State v. Ward,* —— N.C. App. ——, ——, 681 S.E.2d 354, 371 (2009), *disc. review allowed,* —— N.C. ——, —— S.E.2d ——, 2009 WL 3329529 (Oct 08, 2009) (No. 365PA09).

In *Ward,* the

> [d]efendant kept and sold controlled substances that were identi-
> fied solely using the visual identification evidence that [this
> Court] . . . concluded was erroneously admitted. In each instance,
> it is not at all clear . . . that, except for the erroneous admission
> of this visual identification evidence, the evidence would have
> sufficed to support a conviction. As a result, [this Court] con-
> clude[d] that Defendant [wa]s entitled to a new trial in connec-
> tion with each of those convictions.

*Ward* at ——, 681 S.E.2d at 373. As the NarTest machine results and Detective Spring's visual identification were the only evidence that defendant possessed cocaine *and* as both were admitted erroneously, defendant was prejudiced and must receive a new trial.

### III. Conclusion

We conclude that the trial court erred in allowing Captain Lewis to testify as to the results of the NarTest machine. As we are ordering that defendant receive a new trial, we need not consider defendant's other arguments.

NEW TRIAL.

Judges WYNN and BEASLEY concur.