STATE OF NORTH CAROLINA,
v.
LARRY FONTELLIST RAMBERT.
No. COA09-720.
Court of Appeals of North Carolina.
Filed May 4, 2010.
Attorney General Roy Cooper, by Assistant Attorney General Scott A. Conklin, for the State.
Appellate Defender Staples Hughes, by Assistant Appellate Defender Katherine Jane Allen, for Defendant.

UNPUBLISHED OPINION
BEASLEY, Judge.
Larry Fontellist Rambert (Defendant) appeals from judgments entered on his convictions of two counts of selling cocaine and two counts of possession with intent to sell or deliver cocaine. For the reasons stated below, we conclude that Defendant is entitled to a new trial.
In November 2007, Defendant was indicted by an Onslow County grand jury on two counts of selling cocaine, two counts of delivering cocaine, three counts of possession with intent to manufacture, sell, and deliver cocaine, one count of simple possession of marijuana, one count of simple possession of drug paraphernalia, two counts of assault on a government official, one count of resisting, obstructing, and delaying a public officer, two counts of manufacturing cocaine, and two counts of maintaining a place to keep controlled substances.
Defendant pled guilty to possession of cocaine and resisting, obstructing, and delaying a public officer. Pursuant to the plea agreement, the trial court dismissed the following charges: possession with intent to manufacture, sell, and deliver cocaine, possession of drug paraphernalia, and assault on a government official. Trial on the remaining charges took place in September 2008.
On 14 December 2006, the Jacksonville Police Department employed a confidential informant, Carlise White, to purchase cocaine from Defendant. White testified that she contacted Defendant and asked to purchase some cocaine from him. Defendant asked White to meet him at a music store. White was accompanied by Officer Heather Rose while three detectives, Jordan, Ervin, and Covington, performed surveillance. White testified that she exited Rose's car, walked into the music store, came back outside with Defendant, and walked to a Chevrolet truck with Defendant. Defendant went inside the truck, came back out, and handed White an off-white substance. White gave Defendant $40.00 which she had received from the police department. When White returned to Rose's vehicle, she gave Rose the off-white substance she had received from Defendant. Detective Ervin testified that the substance given to White by Defendant appeared to be crack rock. Rose also testified that, based on her experience and training, the substance given to White by Defendant was crack cocaine.
On 15 December 2006, White talked with Detective Ervin and informed him that she could purchase cocaine from Defendant again. White contacted Defendant and they agreed to meet in a certain area of town. White and Officer Crystal Caton drove to the designated location where Defendant was waiting. Defendant was waiting in a truck when White and Caton arrived. White exited Caton's vehicle, approached Defendant, handed Defendant $40.00, and Defendant gave White an off-white substance. Caton testified that the substance handed to White by Defendant was consistent with what she knew to be crack cocaine.
Shelly Partain, an evidence custodian of the Jacksonville Police Department, testified that she had been employed with the police department for 26 years. As part of her duties, she assisted in controlling evidence and testing narcotics. Partain testified that she tested the two substances given by White to the police, using a testing device called the NarTest Analyzer. Partain testified that the NarTest machine was a "generally-accepted device in [her] department, to identify controlled substances." The NarTest machine indicated that the substances obtained from Defendant on 14 and 15 December 2006 were cocaine.
The police department then sent the substances to the NarTest headquarters in Morrisville, North Carolina for additional testing. H.T. Raney, Jr., a senior chemist at NarTest Technologies in Morrisville, testified that Shelia Bayler, also a chemist at NarTest headquarters, conducted tests on Defendant's substances. Bayler did not testify. Raney admitted that he did not conduct any of the tests on Defendant's substances and that Bayler did not testify because she was no longer employed with NarTest Technologies. Raney testified that on 31 January 2007, Bayler tested the substances using a color test, a crystal test, and an infrared test. Raney read from Bayler's reports, stating that "Bayler concluded that [the two substances from Defendant were] Schedule II controlled substance[s], cocaine base."
The jury found Defendant guilty of two counts of selling cocaine and two counts of possession with intent to sell or deliver cocaine. Defendant was sentenced to two terms of 14 to 17 months. From these judgments and sentence, Defendant appeals.
Defendant first argues that the trial court committed plain error in admitting evidence from Partain, the Jacksonville Police Department's evidence custodian, that the substances White purchased were cocaine. Defendant contends that Partain's testimony "was not sufficiently reliable to meet the first and second prongs of the Howerton test[.]" We agree.
Partain testified that one of her responsibilities with the Jacksonville Police Department was to oversee NarTest machine operations. Partain testified about the operation of the NarTest machine by stating that:
1) She turns on the machine.
2) The machine warms up for 15 minutes.
3) She prepares a blank sample, meaning she puts a small amount of water in a test tube into a test cell. She places that test cell in the instrument and runs a check to ensure there is nothing in the test cell or water to contaminate the sample.
4) She takes a small portion of the substance in question, puts it in the test tube, shakes it, lets it sit, shakes it again, lets it sit again, then take 5 milliliters of water out of the test tube and pours it into the machine, which analyzes the sample.
Partain continued to testify that she followed these procedures with the substances sold by Defendant to White and that the NarTest machine indicated that the substances were cocaine.
Because Defendant failed to object at trial, we review his argument under "plain error" analysis. In State v. Odom, the Supreme Court defines the plain error rule as follows:
"[T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a fundamental error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty."
307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (internal quotation marks omitted) (quoting United States v. McCaskell, 676 F.2d 995, 1002 (4th Cir. 1982)). Therefore, Defendant has the burden of showing that "absent the error the jury probably would have reached a different verdict." State v. Walker, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986).
Under N.C. Gen. Stat. § 8C-1, Rule 702(a) (2009):
If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion.
Under N.C. Gen. Stat. § 8C-1, Rule 701 (2009), if a witness is not testifying as an expert witness, "his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue." In Howerton v. Arai Helmet, Ltd., 358 N.C. 440, 597 S.E.2d 674 (2004), the North Carolina Supreme Court enumerated a "three-step inquiry for evaluating the admissibility of expert testimony: (1) [i]s the expert's proffered method of proof sufficiently reliable as an area for expert testimony[;] (2) [i]s the witness testifying at trial qualified as an expert in that area of testimony[;] (3) [i]s the expert's testimony relevant?" Id. at 458, 597 S.E.2d at 686 (citations omitted).
We must first consider whether Partain's use of the NarTest machine was "sufficiently reliable as an area for expert testimony." See id. "[T]o determine whether an expert's area of testimony is considered sufficiently reliable, a court may look to testimony by an expert specifically relating to the reliability, may take judicial notice, or may use a combination of the two." Id. at 459, 597 S.E.2d at 687 (internal quotation marks omitted). In this case, Partain "did not testify as to the reliability of the NarTest machine beyond [her] own experience with it . . . [Partain] did not testify about the methodology used by the NarTest machine to perform its analysis, but only about how it is used." State v. Meadows, ___ N.C. App. ___, ___, 687 S.E.2d 305, 307 (2010). "We are not aware of any cases in which the NarTest machine has been recognized as an accepted method of analysis or identification of controlled substances in North Carolina or in any other jurisdiction in the United States. [Therefore, we] cannot base any conclusions as to [the] reliability of the NarTest machine upon [Partain's] testimony or judicial notice." Id. at ___, 687 S.E.2d at 307.
When the trial court is:
without precedential guidance or faced with novel scientific theories, unestablished techniques, or compelling new perspectives on otherwise settled theories or techniques, a different approach is required. Here, the trial court should generally focus on the following nonexclusive indices of reliability to determine whether the expert's proffered scientific or technical method of proof is sufficiently reliable: the expert's use of established techniques, the expert's professional background in the field, the use of visual aids before the jury so that the jury is not asked to sacrifice its independence by accepting [the] scientific hypotheses on faith, and independent research conducted by the expert.
Within this general framework, reliability is thus a preliminary, foundational inquiry into the basic methodological adequacy of an area of expert testimony.
Howerton, 358 N.C. at 460, 597 S.E.2d at 687 (citations and quotation marks omitted). We must now determine whether the NarTest machine is an established technique. See id. Partain merely testified that the NarTest machine was a "generally-accepted device in [her] department, to identify controlled substances." Partain was unable to testify as to established techniques and failed to "testify as to any other testing methods currently used to identify controlled substances and how the NarTest machine compares with those methods." Meadows, ___ N.C. App. at ___, 687 S.E.2d at 307. The State did not present any evidence that the NarTest machine had been recognized by experts in the field of chemical analysis of controlled substances as a reliable testing method. We conclude that the State did not present evidence that the NarTest machine was an "established technique."
We must now consider Partain's "professional background in the field" of identification of controlled substances. Howerton, 358 N.C. at 460, 597 S.E.2d at 687. Partain testified that she had worked for the Jacksonville Police Department as the evidence custodian for 26 years. She also testified that she had participated in a week-long training on the use of the NarTest machine which she uses to test the substances brought into the police department, but that she was not a chemist by trade or education. Partain testified that the Jacksonville Police Department began using the NarTest machine in January of 2007 and that the substances at issue in this matter were tested on 17 January 2008. She testified that she did not understand how the NarTest machine worked. In State v. Roach:
A person administering a chemical analysis test must be qualified to administer the test in order to testify as to the results. It is not sufficient for the State to establish that the test administrator possesses a license to conduct the test. Instead, the State is required to show that the test administrator possesses a permit issued by the appropriate agency, and that the officer possessed such permit at the time of the administration of the test.

145 N.C. App. 159, 161, 548 S.E.2d 841, 843 (2001) (emphasis added and citations omitted). "However, the NarTest machine has not been designated as an approved method of identification of controlled substances by the State of North Carolina or any agency of the State . . . [and] no agency of the State of North Carolina issues any sort of certification in use of the NarTest machine." Meadows, ___ N.C. App. at ___, 687 S.E.2d at 308. Based on the evidence, we conclude that Partain has no relevant "professional background" in the field of chemical analysis of controlled substances.
The State did not present any evidence regarding the last two Howerton factors as to reliability. Howerton, 358 N.C. App. at 460, 597 S.E.2d at 687. Partain did not testify using any visual aids to help the jury, nor was there any evidence that Partain conducted any independent research on the NarTest machine. Based on all the evidence, we cannot conclude that the NarTest machine is sufficiently reliable.
"As the State failed to proffer evidence to support any of the indices of reliability under Howerton or any alternative indicia of reliability, we conclude that the expert's proffered method of proof [is not] sufficiently reliable as an area for expert testimony[.]" Meadows, ___ N.C. App. at ___, 687 S.E.2d at 308-09 (internal quotation marks omitted). Partain's expert testimony was inadmissible.
The State argues further, however, that even if Partain's testimony was not admissible as expert testimony, it was admissible lay opinion testimony. We disagree.
Pursuant to Rule 701 of the North Carolina Rules of Evidence,
[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue.
N.C. Gen. Stat. § 8C-1, Rule 701. Thus a layman, Officer Partain's testimony must have been rationally based on her perception and helpful to the jury. Rule 701.
Here, Partain's opinion testimony that the substances were cocaine was not rationally based on her training and experience with controlled substances nor on her perception of the physical characteristics of the controlled substances. Instead, Partain's opinion testimony was based solely on her reading of the NarTest results which indicated with an "SFS image" that the substances were cocaine. Such opinion testimony falls squarely within the realm of expert testimony and, thus, is not admissible as lay opinion.
We must now consider whether this testimony amounted to plain error. Besides Partain's testimony, the State submitted the testimony of Raney who was a NarTest laboratories employee. Raney testified regarding the drug tests performed by a non-testifying witness. We conclude, in a later discussion, that Raney's testimony was admitted in error. Moreover, the State presented testimony from several officers who were involved in the undercover purchases. The officers testified based on their visual identifications, that the substances White purchased from Defendant appeared to be cocaine. Without the expert testimony of Raney and Partain, we conclude that the jury would have reached a different verdict. The only scientific evidence that related to the substance being identified as cocaine was not reliable. Based on the foregoing reasons, we conclude that the trial court committed plain error in admitting Partain's testimony.
Secondly, Defendant argues that the trial court erred by admitting the State's hearsay evidence regarding the drug tests performed by a non-testifying witness from the NarTest Laboratory in the absence of a showing by the State that the non-testifying witness was unavailable. Defendant contends that he was deprived of his rights to confrontation and cross-examination. We agree.
Under Melendez-Diaz v. Massachusetts, 557 U.S. ___, 174 L. Ed. 2d 314 (2009), the Supreme Court concluded that because the admission of "certificates of analysis' showing the results of the forensic analysis performed on the seized substances" were made to provide prima facie evidence of the composition, quality, and weight of the substance at trial, this evidence constituted a testimonial statement. The Confrontation Clause of the Sixth Amendment "guarantees a defendant's right to confront those who bear testimony against him." Id. at ___, 174 L. Ed. 2d at 320 (internal quotations omitted). "A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination." Id. at ___, 174 L. Ed. 2d at 320-21. Therefore, the Supreme Court held that the certificates of analysis were witnesses for purposes of the Sixth Amendment. Id. at ___, 174 L. Ed. 2d at 322.
In the case before us, Raney's testimony was based solely on Bayler's tests. In the case before us, NarTest laboratories chemist Bayer performed tests on the substances Defendant allegedly sold to White to determine whether they tested positive for cocaine, but did not testify. Raney's testimony was based solely on a recitation of Bayler's tests, and did not include his personal opinions on the results of the tests. Raney's testimony included the following:
[PROSECUTOR:] [C]ould you briefly describe the procedure of the examination that occurred on State's Exhibit Number 4?
[RANEY:] Yes, ma'am. [Bayler] received this evidence, started her analysis on the 31st day of January, 2007. She identified the material as a sealed, initialed manila envelope that contained off-white material, determined the weight received at the time of her initial testing to be 0.319 grams. Weight of the material that was returned was 0.317 grams. She did two color tests, a crystal test and an infrared, determining the material 
[DEFENSE COUNSEL:] I'll object, Judge. I don't see that on this exhibit at all.
[RANEY:] She asked me what was done with it. I'm reading from her 
[DEFENSE COUNSEL:] I'm objecting to what he's 
[THE COURT:] Okay. Let him lay a foundation as to what he is referring to, as an expert 
[PROSECUTOR:] Okay.
[THE COURT:]  to answer the previous question.
[PROSECUTOR:] I had asked you earlier about the  if you would describe the type of chemical analysis that was conducted. And, right now, what documents are you referring to?
[RANEY:] I'm referring to her worksheet that [Bayler] did in preparation of the report that you asked me about, State's Exhibit 3-C.
. . . .
[PROSECUTOR:] Okay. All right. As a result of
[Partain's] chemical analysis, was she able to form an opinion about the 
[DEFENSE COUNSEL:] I'll object, because I haven't been given a copy. I'm not sure what he's reading off of.
. . . .
[PROSECUTOR:] As a result of the procedures that were followed in the testing of this case, were you able to form an opinion about what the substance examined is?
[RANEY:] Yes, ma'am. [Bayler] concluded that it was the Schedule II controlled substance, cocaine base. The weight of that material was 0.3 grams. The material was tested in the presence of and returned to [Partain] on the same date.
We conclude that the circumstances of the present case are indistinguishable from the facts in Melendez-Diaz. Raney's testimony constituted "testimonial statements" covered by the Confrontation Clause because they were materials "that declarants would reasonably expect to be used prosecutorially[.]" Id. at ___, 174 L. Ed. 2d at 321. Because the State failed to show that Bayler was unavailable to testify at trial and because Defendant did not have a prior opportunity to cross-examine Bayler, the trial court erred by admitting Raney's testimony. As a result, Defendant was deprived of his right to confront Bayler. Id. at ___, 174 L. Ed. 2d at 322.
The State argues that "[e]ven assuming, arguendo, that the trial court did err by allowing Mr. Raney's testimony, such error would not be considered plain error" because Raney's testimony "only served to further corroborate" the testimony of other witnesses.
In support of this argument, the State first relies on Partain's testimony that the substances at issue were cocaine. However, as explained above, the trial court erred in admitting this testimony and, accordingly, it was not competent evidence that the substances at issue were cocaine.
The State further relies on the testimony of Detectives Ervin and Rose and Officer Canton. Ervin testified, over objection, that White was given "what was later found out to be cocaine." The trial court sustained the objection and allowed Defendant's motion to strike the testimony, explaining to the jury, as to "[t]he characterization [of] the substance, ladies and gentleman, disregard that statement of the witness. Do not consider it now or for any purpose during your deliberations." Ervin later testified that he had seen crack cocaine before 14 December 2006 and that what he saw the evening of 14 December 2006 was "consistent with" what he knew to be crack cocaine.
Detective Rose testified that White "placed what would be consistent with crack cocaine into the palm of my hand[.]" Although Rose admitted that she had not participated in many undercover controlled buys prior to 14 December 2006, she had seen crack cocaine before and the object placed in her hand by White was "consistent with" what she knew to be crack cocaine.
Officer Christopher Cox testified that he "collected from Detective Cooper a sum of crack cocaine." Defendant immediately objected, stating, "[i]t hasn't been established what it was." The trial court sustained the objection and allowed Defendant's motion to strike the testimony. The trial court explained, "[y]ou may ask as to whether the substance he obtained is consistent with the characteristics of what he knows crack cocaine to be." Cox then testified that the substance appeared to be crack cocaine.
Officer Caton testified, over Defendant's objection, that White "possessed some crack cocaine that she had bought." The trial court sustained the objection. Caton later testified that the object she observed in White's possession was "consistent with" crack cocaine that Caton had previously observed.
In State v. Davis, ___ N.C. App. ___, 688 S.E.2d 829 (2010), this Court held that any error in the admission of a laboratory report stating that the substance was cocaine was harmless error in light of the copious, unchallenged evidence establishing that the substance at issue was crack cocaine. In Davis, defendant failed to object when police officers repeatedly characterized the substance at issue as cocaine. Furthermore, defendant's objection to an officer's opinion, based on his training and experience, that the substance appeared to be crack cocaine was overruled, and defendant failed to assign error to the trial court's ruling on appeal. This Court determined that the unchallenged testimony of the officers was "sufficient to show that the substance at issue was cocaine." Id. at ___, 688 S.E.2d at 835.
Here, unlike in Davis, defense counsel repeatedly objected to the officers' characterization of the substances at issue as cocaine. Furthermore, the trial court sustained defense counsel's objection to the characterization because the identity of the substances at issue "hasn't been established" and instructed the jury that it was not to consider such characterization during deliberations. The remaining testimony that the substances were "consistent with" crack cocaine is not sufficient evidence that the substances were, indeed, cocaine.[1]
Contrary to the State's argument, Raney's testimony did not "only serve[] to further corroborate" substantive evidence that the substances were cocaine. Instead, his testimony was the sole evidence as to the composition of the substances at issue. Accordingly, the admission of Raney's testimony could not have been harmless.
Lastly, Defendant argues that he was denied the effective assistance of counsel under the Sixth and Fourteenth Amendments to the United States Constitution and under Article I, §§ 19 and 23 of the North Carolina Constitution. Defendant argues that he was denied this right when his trial attorney failed to object to admission of Partain's evidence and Raney's evidence when the State presented it at trial. Based on our discussion above, we do not consider Defendant's remaining argument.
For the foregoing reasons, we conclude that the trial court erred in allowing Partain and Raney to testify and order that Defendant receive a new trial.
New trial.
Judges STEPHENS and STROUD concur.
Report per Rule 30(e).
NOTES
[1] While the evidence in Davis was sufficient to positively establish the substance as cocaine, the testimony in this case that the substance was "consistent with" cocaine merely established that it was possible that the substance was cocaine.