STATE OF NORTH CAROLINA v. KENNETH BERNARD DAVIS

No. COA09-278

(Filed 16 February 2010)

### Evidence— testimony—nontestifying analyst's laboratory report—cocaine—harmless error

Even if a non-testifying lab analyst's laboratory report was erroneously admitted in a possession with intent to sell or deliver cocaine and sale of cocaine case, such error was harmless beyond a reasonable doubt in view of the overwhelming unchallenged evidence establishing that the substance at issue was crack cocaine.

Appeal by Defendant from judgment entered 20 October 2008 by Judge Clifton E. Johnson in Mecklenburg County Superior Court. Heard in the Court of Appeals 3 September 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General E. Burke Haywood, for the State.*

*Bryan Gates for Defendant.*

STEPHENS, Judge.

At issue in this case is whether the trial court violated Defendant's Sixth Amendment right of confrontation by allowing into evidence the testimony of a forensic analyst regarding the results of a forensic analysis performed by an analyst who did not testify at trial and the report of the non-testifying analyst. For the reasons which follow, we conclude that Defendant received a fair trial, free of error.

### I. Procedural History

On 14 November 2007, Defendant was arrested and charged with possession with intent to sell or deliver cocaine and sale of cocaine. On 26 November 2007, Defendant was indicted for possession with intent to sell or deliver cocaine, sale of cocaine, and having obtained

habitual felon status. The case was tried during the 17 October 2008 Criminal Session of Mecklenburg County Superior Court. The jury returned guilty verdicts on all charges and the trial court sentenced Defendant to 168 to 211 months imprisonment. Defendant gave notice of appeal in open court on 20 October 2008.

## II.  Evidence

Detective D.L. Kellough of the Charlotte Police Department testified as follows: On 14 November 2007, Kellough was attempting to make undercover purchases of crack cocaine in the Reid Avenue area of Charlotte, N.C. Kellough and Officer Kimberly Blackwell, also of the Charlotte Police Department, drove into a convenience store parking lot where Defendant Kenneth Bernard Davis flagged them down. When Kellough stopped the vehicle, Defendant came up to the window and asked what they were looking for. Kellough replied that they wanted a couple of "dimes," meaning two ten-dollar rocks of crack cocaine. Defendant told them he could take them somewhere to get the crack.

Defendant got into the back of the officers' vehicle and directed them to the 2900 block of Reid Avenue. Kellough gave Defendant a marked twenty-dollar bill to purchase the crack, keeping Defendant's jacket so that Defendant would not run off with the money.

Defendant left the officers' view and then returned a short time later with an object. He gave the object to Blackwell and got into the back seat of the vehicle to be taken back to the store. Defendant asked Blackwell if she would break him off "a piece of that" for helping them out. Kellough testified that he knew Defendant was referring to "[t]he crack cocaine that he had just purchased for us."

On the way back to the store, Officer Ryan Buckler, also with the Charlotte Police Department, arrested Defendant. Kellough put the object received from Defendant into a manila envelope to give to Property Control. Kellough testified, over objection, "Based on my training and experience[,] my opinion of that substance [sic] appeared to be crack cocaine."

Blackwell testified that when Defendant got back into the officers' vehicle, Defendant "immediately handed me the crack rock. And then as soon as Kellough saw the crack rock[,] he relayed that we had a good case, the arrest team could come in." Blackwell also testified that Defendant asked if they would "pinch him off a piece for helping out[,]" meaning that "[h]e wanted a small piece off the crack rock that

he had handed us." Blackwell identified State's exhibit number three as "the envelope that the crack rock was put in that we purchased." She acknowledged that the crack rock was actually put into a two-inch-by-two-inch manila envelope, which was placed into the larger envelope. She further identified State's exhibit number four as the two-inch-by-two-inch manila envelope and testified, over objection, that the envelope "has a crack rock in it." Over objection, the manila envelope and its contents were admitted into evidence.

Blackwell also identified the property sheet "[f]or the crack rock that Detective Kellough and I purchased[,]" and testified that the item that was turned in with the property sheet was described on the sheet as a "crack cocaine rock" weighing 0.4 grams.

Buckler testified that he got into the backseat of the vehicle driven by Kellough and placed Defendant in handcuffs. Buckler then performed a search of Defendant and discovered a metal pipe with a metal Brillo pad and "what I believed to be an individual crack rock."

Kemika Daniels Alloway, a forensic chemist with the Charlotte Mecklenburg Police Department ("CMPD") Crime Laboratory, was tendered by the State as an expert witness in the field of forensic chemistry. Alloway testified that the substance sold by Defendant to Kellough and Blackwell was analyzed by Tony Aldridge, a chemist with the CMPD who had since retired. Alloway then testified that Deanne Johnson, another forensic analyst with the CMPD, reviewed Aldridge's work and determined that the substance was cocaine. Alloway also testified that, based on her experience and her review of Aldridge's work and test results, she concluded that the substance sold to Kellough and Blackwell was cocaine weighing 0.30 grams. Over objection, Aldridge's lab report stating that the substance at issue was cocaine was entered into evidence.

### III. Discussion

Defendant first contends that the trial court erred in allowing Alloway to testify to the results of the chemical analysis performed by Aldridge, violating Defendant's Sixth Amendment right to confront and cross-examine the witnesses against him. Specifically, Defendant contends that "[u]sing a non-testing analyst to introduce a report on the chemical composition of a sample violates [Defendant's] right to confrontation[.]"

The Confrontation Clause of the Sixth Amendment bars the admission of testimonial statements unless the declarant is unavail-

able to testify and the accused has had a prior opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 53-54, 158 L. Ed. 2d 177, 194 (2004); *State v. Lewis*, 361 N.C. 541, 545, 648 S.E.2d 824, 827 (2007). Recently, in *Melendez-Diaz v. Massachusetts*, —— U.S. ——, 174 L. Ed. 2d 314 (2009), the United States Supreme Court revisited the issue of what constitutes a "testimonial" statement subject to a defendant's Sixth Amendment right to confrontation. In *Melendez-Diaz*, defendant objected to the admission of three "certificates of analysis" which showed that seized substances contained cocaine. *Id.* at ——, 174 L. Ed. 2d at 320. In Massachusetts, state law required a forensic analyst, at the request of the police, to test seized evidence for the presence of illegal drugs, Mass. Gen. L. ch. 111, § 12, and required the analyst to provide the police with his or her findings on a "signed certificate, on oath." Mass. Gen. L. ch. 111, § 13. The certificate could then be admitted in court as "prima facie evidence of the composition, quality, and . . . net weight" of the substance at issue in the prosecution. Mass. Gen. L. ch. 22C, § 39. The Supreme Court held that these certificates, which it described as "quite plainly affidavits," were testimonial statements because they were made under oath and under circumstances which would lead an objective witness to believe that the statement would be used at a later trial; indeed, the Court noted that the sole purpose of the certificates was to provide prima facie evidence at trial. *Melendez-Diaz*, —— U.S. at ——, 174 L. Ed. 2d at 320. Thus, the Supreme Court held that the admission of the affidavits was error and reversed the judgment of the trial court. *Id.* at ——, 174 L. Ed. 2d at 332.

Following *Melendez-Diaz*, the North Carolina Supreme Court concluded in *State v. Locklear*, 363 N.C. 438, 681 S.E.2d 293 (2009), that the trial court erred in admitting evidence of forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify at trial. In *Locklear*, the State tendered John D. Butts, M.D., the Chief Medical Examiner for North Carolina, as an expert in the field of forensic pathology. Dr. Butts testified, over defense counsel's objection, to the results of the autopsy report of an alleged prior victim of the defendant. The autopsy report was prepared by Karen Chancellor, M.D., a forensic pathologist who performed the autopsy on the victim's body in 1997. Dr. Butts testified that, according to the autopsy report, the cause of the victim's death was blunt force injuries to the chest and head. Dr. Butts also testified to the results of a forensic dental analysis, which was included in the autopsy report, performed by Dr. Jeffrey Burkes, a consultant on the faculty of the

University of North Carolina School of Dentistry. Dr. Butts stated that, by comparing the victim's dental records to the skeletal remains, Dr. Burkes positively identified the body as that of the victim. The autopsy report was admitted into evidence over defense counsel's objection. Neither Dr. Chancellor nor Dr. Burkes testified.

In concluding that the trial court erred in overruling defendant's objections to the admission of this evidence, the Court held:

> Here, the State sought to introduce evidence of forensic analyses performed by a forensic pathologist and a forensic dentist who did not testify. The State failed to show that either witness was unavailable to testify or that defendant had been given a prior opportunity to cross-examine them. The admission of such evidence violated defendant's constitutional right to confront the witnesses against him . . . .

*Id.* at 452, 681 S.E.2d at 305. However, the Court concluded further that the admission of the evidence was harmless beyond a reasonable doubt as the evidence did not establish any fact critical to the State's case and the State offered "copious evidence" that defendant had killed the victim in the case pending before the court, including defendant's confessions to the crime. *Id.* at 453, 681 S.E.2d at 305.

This Court has applied the holdings in *Melendez-Diaz* and *Locklear* in two recent cases concerning the admission of evidence of forensic analyses where the experts who performed the analyses did not testify at trial. First, in *State v. Galindo*, —— N.C. App. ——, 683 S.E.2d 785 (2009), a chemical analyst who did not weigh the cocaine found at defendant's residence testified that the cocaine weighed approximately 1031.83 grams. This Court determined that the expert's testimony, which was based " 'solely' " on a laboratory report prepared by an analyst who had not been subpoenaed to testify, was "indistinguishable from the opinion testimony held to be unconstitutional in *Locklear*." *Id.* at ——, 683 S.E.2d at 788. Thus, this Court concluded that defendant's Sixth Amendment rights had been violated, although this Court also concluded that the error was harmless beyond a reasonable doubt. *Id.* at ——, 683 S.E.2d at 788-89.

Subsequently, in *State v. Mobley*, —— N.C. App. ——, 684 S.E.2d 508 (2009), *cert. denied*, —— N.C. ——, S.E.2d —— (2010), this Court distinguished the expert testimony at issue in *Locklear* and held that the testimony of a forensic analyst regarding DNA tests performed by other analysts did not violate the Confrontation Clause, and, thus,

was properly admitted into evidence, as the analyst "testified not just to the results of other experts' tests, but to her own technical review of these tests, her own expert opinion of the accuracy of the non-testifying experts' tests, and her own expert opinion based on a comparison of the original data." *Id.* at ——, 684 S.E.2d at 511.

In this case, *without objection*, Alloway was questioned by the State as follows:

[State:] Do forensic chemists review each other's work?

[Alloway:] Yes.

[State:] How do they do that?

[Alloway:] Once an item has been completed, the analysis is ready and the final report is ready, it's turned over to another forensic analyst to look at it and make sure that they would come to the same conclusions that the original analyst came to.

[State:] Was that done in this case?

[Alloway:] Yes.

[State:] Who reviewed Mr. Aldridge's work?

[Alloway:] Deanne Johnson.

[State:] Did she come to a finding on—as to her review of his work?

[Alloway:] Yes.

[State:] What was her[] finding?

[Alloway:] That it was cocaine.

[State:] Did you review the work of Mr. Aldridge in this case?

[Alloway:] Yes.

[State:] And did you review his work on specifically control [n]umber 41999?

[Alloway:] Yes.

[State:] When did you do that?

[Alloway:] Today.

[State:] What tests were conducted by Mr. Aldridge when he examined the substance?

[Alloway:] Mr. Aldridge performed a color test, a melting point test, as well as a GC and a mass spec.

Furthermore, *without objection*, Alloway explained in detail how each of the four different tests was administered, what the results of each test were, and what the results of each test indicated, testifying that the results of each of the four tests indicated that the substance was cocaine. She further testified, *without objection*, to the procedures used to weigh a substance and that "[i]n this case the substance weighed 0.30 grams."

Alloway was then questioned further, *without objection*, by the State as follows:

[State:] . . . [A]re the tests that you've described for the jury in accordance with the lab's procedures?

[Alloway:] Yes.

[State:] Have you performed these same tests during your career to identify control[led] substances?

[Alloway:] Yes.

[State:] As a forensic chemist, are these the tests that you would personally rely upon in forming an opinion as to the identity and weight of a control[led] substance?

[Alloway:] Yes.

[State:] To your knowledge[,] are these tests the same tests that other experts in the field of forensic chemistry would rely upon in forming an opinion as to the identity and weight of a chemical substance?

[Alloway:] Yes.

. . . .

[State:] I'm now showing you what I have marked as State's Exhibit Number 14. Do you recognize State's Exhibit Number 14?

[Alloway:] Yes.

[State:] What do you recognize it to be? [Alloway:] It's a copy of our final report. [State:] Did you review that report as part of your review in this case?

[Alloway:] Yes.

. . . .

[State:] Based upon your experience and your review of the work and test results of Tony Aldridge, did you form your own expert opinion with regard to the identity and weight of the substance [at issue in this case] . . . ?

[Alloway:] Yes.

[State:] What is that opinion?

[Alloway:] Cocaine weighing 0.30 grams.

As Defendant failed to object at trial to any of the aforementioned testimony, Defendant failed to preserve for appeal the argument that the evidence was erroneously admitted. *See* N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely . . . objection . . . stating the specific grounds for the ruling the party desired the court to make . . . ."). "Moreover, because [D]efendant did not 'specifically and distinctly' allege plain error as required by North Carolina Rule of Appellate Procedure 10(c)(4), [D]efendant is not entitled to plain error review of this issue." *State v. Dennison*, 359 N.C. 312, 312-13, 608 S.E.2d 756, 757 (2005) (citing N.C. R. App. P. 10(c)(4)).[1] Furthermore, "[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal." *Anderson v. Assimos*, 356 N.C. 415, 416, 572 S.E.2d 101, 102 (2002). While this Court may pass upon constitutional questions not properly raised at the trial level in the exercise of its supervisory jurisdiction "[t]o prevent manifest injustice[,]" N.C. R. App. P. 2, because there was copious unchallenged evidence before the jury that the substance at issue was cocaine, including Alloway's unchallenged testimony, we decline to invoke Rule 2 in this case.

Moreover, without objection by Defendant, the following testimony was offered: Kellough testified that he heard Defendant ask Blackwell if she would break him off "a piece of that" for helping them out and that he knew Defendant was referring to "[t]he crack cocaine that he had just purchased for us." Blackwell testified that Defendant "immediately handed me the crack rock. And then as soon as Kellough saw the crack rock[,] he relayed that we had a good case, the arrest team could come in." Blackwell also testified that Defendant asked if they would "pinch him off a piece for helping

---

1. Aside from the bare mention of testimony in his assignment of error and argument heading, Defendant advances no argument on appeal regarding any alleged error in admitting this testimony. Defendant's argument instead focuses solely on the admission of the report.

out[,]" meaning that "[h]e wanted a small piece off the crack rock that he had handed us." Furthermore, Blackwell identified State's exhibit number three as "the envelope that the crack rock was put in that we purchased[.]" Buckler testified that when he searched Defendant incident to his arrest, Buckler discovered a metal pipe with a metal Brillo pad and "what I believed to be an individual crack rock."

By failing to object at trial to the aforementioned testimony, Defendant failed to preserve for appeal the argument that the evidence was erroneously admitted. *See* N.C. R. App. P. 10(b)(1). Moreover, Defendant did not allege plain error on appeal and, thus, is not entitled to plain error review of this issue. N.C. R. App. P. 10(c)(4)); *Dennison*, 359 N.C. at 312-13, 608 S.E.2d at 757.

Furthermore, Kellough testified, "Based on my training and experience[,] my opinion of that [sic] substance appeared to be crack cocaine." Additionally, Blackwell identified State's exhibit number four as the two-inch by two-inch manila envelope that "has a crack rock in it." Although Defendant objected to this testimony at trial, Defendant's objections were overruled and Defendant failed to assign as error and argue on appeal the trial court's rulings. Accordingly, this Court may not review the propriety of the rulings. *See* N.C. R. App. P. 10(a) ("[T]he scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal . . . ."); N.C. R. App. P. 28(b)(6) ("Assignments of error not set out in the appellant's brief, or in support of which no reason or argument is stated or authority cited, will be taken as abandoned.").

We conclude that the aforementioned testimony of Kellough, Blackwell, Buckler, and Alloway is sufficient to show that the substance at issue was cocaine. *See State v. Freeman*, 185 N.C. App. 408, 414-15, 648 S.E.2d 876, 881-82 (2007) (no plain error where officer with "extensive training and experience" offered lay opinion that substance seized was crack cocaine).[2]

---

2. In *State v. Ward*, —— N.C. App. ——, 681 S.E.2d 354, *disc. review allowed*, —— N.C. ——, 686 S.E.2d 153 (2009), this Court speculates that the holding in *Freeman* has either been impliedly overruled or significantly eroded by the North Carolina Supreme Court's decision in *State v. Llamas-Hernandez*, 363 N.C. 8, 673 S.E.2d 658 (2009), reversing this Court's decision, 189 N.C. App. 640, 649 S.E.2d 79 (2008), for the reasons stated in the dissenting opinion. *Ward*, —— N.C. App. at ——, 681 S.E.2d at 369-71. However, in *Llamas-Hernandez*, the dissent states, "Crack cocaine has a distinctive color, texture, and appearance. While it might be permissible, based upon these characteristics, for an officer to render a lay opinion as to crack cocaine, it cannot be permissible to render such an opinion as to a non-descript white powder [cocaine]." *Llamas-Hernandez*, 189 N.C. App. at 654, 649 S.E.2d at 87. Based on this statement, we believe that *Freeman* is still binding precedent as to an officer's lay opinion identifying

Defendant asserts, however, that his conviction should be reversed because "[d]rug testing reports are testimonial and forensic analyses are not admissible without the testing analyst's testimony." We need not address this argument because we conclude that, even if Aldridge's laboratory report was erroneously admitted, such error was harmless beyond a reasonable doubt in view of the copious—indeed, overwhelming—unchallenged evidence establishing that the substance at issue was crack cocaine.

NO ERROR.

Judges HUNTER, JR. and BEASLEY concur.

————————————————————————————————

crack cocaine. Moreover, in *Llamas-Hernandez*, the issue of the admissibility of a law enforcement officer's opinion on the identity of a non-descript white powder was properly for appellate review whereas, in this case, as previously stated, Defendant has not challenged or argued the admissibility of the officers' testimony identifying the substance Defendant sold them as crack cocaine. Consequently, *Llamas-Hernandez* does not control the outcome of this case.