STROUD, Judge.
 

 *342
 
 Defendant appeals from convictions of several drug-related offenses. The trial court did not err by denying defendant's motion to suppress evidence regarding the pretrial identification using his DMV photograph, and the trial court did not err by admitting evidence of the identification and weight of the controlled substances from a substitute analyst who did her own independent analysis of machine-generated data. We therefore affirm the trial court's denial of defendant's motion to suppress and find no error as to the admission of evidence.
 

 I. Background
 

 Detective Jessica Jurney of the Iredell County Sheriff's Office conducted an undercover narcotics purchase with Sergeant Chris Walker of the Mooresville Police Department in September of 2012. Detective Jurney was to meet a man known as "Junior" at a McDonald's restaurant to purchase the drugs. "Junior" arrived at the McDonald's parking lot in a gold Lexus. Detective Jurney interacted with him for three or four minutes and successfully purchased what would later be identified as oxycodone and heroin from defendant. A surveillance team from the Mooresville Police Department including Sgt. Walker witnessed the transaction. The identity of defendant was unknown at the time of the drug deal, but Sgt. Walker obtained defendant's name from a confidential informant. Several days after the transaction, Sgt. Walker obtained a photograph of defendant from the Department of Motor Vehicles ("DMV") and showed it to Detective Jurney. Sgt. Walker also testified that he had seen defendant on another occasion driving the same gold Lexus with the same license plate number as the one he saw during the drug transaction.
 

 Defendant was indicted on numerous drug related charges in December of 2012. Defendant pled guilty to these charges, but his plea was overturned by this Court in 2016 based upon a sentencing error. On remand, defendant elected to have a new trial, and Detective Jurney and Sgt. Walker identified defendant over objection in court as the individual who sold the drugs to Jurney. Erica Lam, the forensic chemist who tested the substances purchased from defendant, was not available to testify during the trial since
 
 *727
 
 she had moved out of state.
 
 [1]
 
 The State
 
 *343
 
 presented Lam's supervisor, Lori Knops, who independently reviewed Lam's findings to testify instead. The jury found defendant guilty of possession with intent to manufacture, sell, or deliver heroin, sale of heroin, trafficking in opium or heroin by possession, trafficking in opium or heroin by sale, possession with intent to sell or deliver oxycodone, and sale of oxycodone. Judgment was entered against defendant on all charges which were consolidated into a sentence of 70 months minimum to 84 months maximum. Defendant gave notice of appeal in open court.
 

 II. Motion to Suppress
 

 "[Defendant] contends that the in-court identification of him by Ms. Jurney and by Officer Walker should have been suppressed because the identifications were unreliable; tainted by the impermissibly suggestive Department of Motor Vehicles photograph."
 

 Standard of Review
 

 Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law."
 
 State v. Cooke
 
 ,
 
 306 N.C. 132
 
 , 134,
 
 291 S.E.2d 618
 
 , 619 (1982) (citations omitted). "The trial court's conclusions of law, however, are fully reviewable on appeal."
 
 State v. Hughes
 
 ,
 
 353 N.C. 200
 
 , 208,
 
 539 S.E.2d 625
 
 , 631 (2000).
 

 Analysis
 

 Defendant does not challenge any of the trial court's findings of fact in the order but argues, "[a]lthough the court's findings of fact 17 and 18 discuss the DMV photo, the trial court failed to address whether or not this procedure was impermissibly suggestive and, if it was, whether or not it was so impermissibly suggestive that it created a very substantial likelihood of irreparable misidentification." We review the trial court's conclusions of law
 
 de novo
 
 . Our Supreme Court has described a two-step process for this issue:
 

 This Court employs a two-step process in evaluating such claims of denial of due process. First we must determine whether an impermissibly suggestive procedure was used in obtaining the out-of-court identification. If this question is answered in the negative, we need proceed no further. If it is answered affirmatively, the second inquiry is whether, under all the circumstances, the suggestive procedures
 
 *344
 
 employed gave rise to a substantial likelihood of irreparable misidentification.
 

 State v. Hannah
 
 ,
 
 312 N.C. 286
 
 , 290,
 
 322 S.E.2d 148
 
 , 151 (1984) (citations omitted). Relevant factors for determining whether the identification procedures were impermissibly suggestive include: "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty shown by the witness, and the time between the offense and the identification."
 
 State v. Johnson
 
 ,
 
 161 N.C. App. 68
 
 , 73,
 
 587 S.E.2d 445
 
 , 448 (2003) (citation omitted).
 

 Some of the relevant findings of fact are:
 

 4. Investigator Jurney was provided with information from the informant and then observed a black male with a stocky to heavy set build and a bald head walk across the parking lot of the McDonald's parking lot and get into a gold in color Lexus motor vehicle. The black male was alone in the vehicle.
 

 5. Investigator Jurney approached the black male while he was in the vehicle and had a conversation with him.
 

 6. Investigator Jurney then gave the black male $230.00 in pre-recorded buy money and the black male gave her 19 pills and a plastic bag containing a brown powder substance. Investigator Jurney was anticipating to purchase oxycodone and heroin. The contraband appeared to
 
 *728
 
 Investigator Jurney to be consistent with oxycodone and heroin, based upon her training, education and experience.
 

 7. At the time of this transaction, Investigator Jurney had been working as an undercover officer for approximately 1 year and had conducted dozens of undercover purchases of controlled substances. Investigator Jurney knew the importance of identifying the correct suspect.
 

 8. Investigator Jurney was able to observe the suspect, continuously throughout the drug transaction, which lasted 3 to 4 minutes at least and had an unobstructed view of the suspect during this time.
 

 9. Investigator Jurney was at an arm's length and was able to see the suspects [sic] face through the open window of the vehicle in which the suspect was seated.
 

 *345
 
 10. At the conclusion of the drug transaction, Investigator Jurney exchanged telephone numbers with the suspect and watched the suspect drive away. Investigator Jurney paid close attention to the suspect in order to be able to identify the suspect at a later time.
 

 11: Ms. Jurney identified the defendant in Court as the person who sold the contraband to her on September 7, 2012 and indicated that there was no doubt that it was the defendant who sold the contraband to her.
 

 12. Investigator Walker was part of the surveillance team providing security for Investigator Jurney on September 7, 2012.
 

 13. Investigator Walker's view of the suspect was not obstructed. Investigator Walker observed the interaction between the suspect and Investigator Jurney from a distance of approximately 25 - 30 yards.
 

 14. Investigator Walker knows that correctly identifying a suspect in a criminal investigation is of the utmost importance.
 

 15. Investigator Walker observed the gold in color Lexus in the McDonald's parking lot. Investigator Walker observed a stocky black male with a bald head near the vehicle. Investigator Walker made arrangements with the confidential informant for the drug transaction to occur and knew that the subject's nickname was "Junior."
 

 16. A few days after the drug transaction, Investigator Walker then obtained what was believed to be the suspect's name (Harold Pless) from the confidential informant and requested that another employee of the Mooresville Police Department perform a name search of "Harold Pless."
 

 17. Investigator Walker was provided a DMV photo of the defendant and recognized the defendant as the individual who sold the pills and suspected heroin to Investigator Jurney on September 7, 2012.
 

 18. Investigator Walker then contacted Investigator Jurney and showed her the single DMV photo of the defendant. Investigator Jurney identified the photo of the defendant and confirmed that the defendant was the subject who sold her the contraband.
 

 *346
 
 19. On October 5, 2012, Investigator Walker saw the defendant in the same McDonald's parking lot near the intersection of US Highway 21 and Gateway Blvd., Mooresville, NC. The defendant was operating the same gold in color Lexus motor vehicle and the defendant was placed under arrest.
 

 20. Investigator Walker identified the defendant in Court as the person who sold the contraband to Ms. Jurney on September 7, 2012.
 

 The trial court then made these conclusions of law regarding the identification
 
 [2]
 
 :
 

 2. In evaluating the likelihood of irreparable misidentification, the Court considers:
 

 a. the opportunity of the witness to view the criminal at the time of the crime;
 

 b. the witness' degree of attention;
 

 *729
 
 c. the accuracy of the witness' prior description;
 

 d. the level of certainty demonstrated at the confrontation;
 

 e. the time between the crime and the confrontation.
 

 3. Both Investigator Walker and Investigator Jurney had direct and unobstructed views of the suspect.
 

 4. Both Investigator Walker and Investigator Jurney were paying close attention to suspect because correctly identifying the perpetrator is of the utmost importance.
 

 5. Both Investigator Walker and Investigator Jurney were certain in their identification of the defendant as the perpetrator.
 

 6. Although there was a long period of time between the time of the offense and the confrontation, both Investigator Walker and Investigator Jurney recorded detailed notes of the event and identified the defendant
 
 *347
 
 as the perpetrator by looking at a DMV photo within a few days of the occurrence.
 

 7. Based upon the totality of the circumstances, the defendant's motion should be denied.
 

 It is obvious that the trial court did not "fail to address" whether the identification was impermissibly suggestive based upon the trial court's detailed findings of fact and recitation of the factors it must consider to determine this exact issue. But defendant is correct that the trial court did not make an explicit conclusion of law that the identification procedure was not impermissibly suggestive. Instead, the trial court listed the factors in conclusion of law 2 and then made separate findings of ultimate fact as to each factor in conclusions of law 3 through 6. The trial court's ultimate findings on the factors show that the trial court did address the identification procedure and implicitly concluded it was not impermissibly suggestive. The conclusions of law could be worded more clearly, but we have no doubt as to the meaning and substance.
 

 Defendant cites to
 
 State v. Smith
 
 ,
 
 134 N.C. App. 123
 
 ,
 
 516 S.E.2d 902
 
 (1999), in support of his argument that the "evidence presented during voir dire and the facts found, however, show that the DMV's photo procedure was irreparably suggestive and resulted in a strong possibility of misidentification and violation of due process." But again, defendant does not challenge the findings of fact, just the trial court's analysis of those facts. And this case differs from
 
 Smith
 
 , where this Court found the use of a high school yearbook to identify a defendant to be impermissibly suggestive when "[d]efendant's picture was the only picture of a black male on the page, and defendant's name was printed below his picture and clearly visible."
 
 134 N.C. App. at 127
 
 ,
 
 516 S.E.2d 902
 
 , 906. ("[The Officer] knew that the suspect she was attempting to identify was a black male, and [a confidential informant] had previously told her defendant's name as it appeared under his photo.").
 

 Defendant also relies on
 
 State v. Al-Bayyinah
 
 ,
 
 356 N.C. 150
 
 ,
 
 567 S.E.2d 120
 
 , (2002), and
 
 State v. Knight
 
 ,
 
 282 N.C. 220
 
 ,
 
 192 S.E.2d 283
 
 (1972), for the premise that "[s]ingle-photo identifications are inherently suggestive." But there is no absolute prohibition of using a single photograph:
 

 In
 
 Simmons v. United States
 
 ,
 
 390 U.S. 377
 
 ,
 
 88 S.Ct. 967
 
 ,
 
 19 L.Ed.2d 1247
 
 (1968), the Court refused to prohibit absolutely the use of identification by photograph and instead held that "each case must be considered on its own facts, and that convictions based on eyewitness identification at trial following a pretrial identification by photograph
 
 *348
 
 will be set aside on that ground only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification."
 

 Knight
 
 ,
 
 282 N.C. at 225
 
 ,
 
 192 S.E.2d at 287
 
 .
 

 The present case also differs from
 
 State v. Jones
 
 , where this Court found the use of a single photo was impermissibly suggestive. In
 
 Jones
 
 , an agent was shown a picture "some seven months after the incident occurred, after the witness had been notified that he would be receiving a photograph of the defendant and with the defendant's name written on the back[.]"
 
 98 N.C. App. 342
 
 , 347,
 
 391 S.E.2d 52
 
 , 56 (1990). Here, the DMV photo was shown to Detective Jurney only
 
 *730
 
 days after the purchase took place, and she neither knew defendant's name nor was it on the photo.
 

 Defendant also argues that the trial court must have found the identification procedure to be impermissibly suggestive because the order addressed both of the two steps of the analysis but the second step would not be necessary based upon a conclusion of law that the procedure was not impermissibly suggestive.
 
 See
 

 Hannah
 
 ,
 
 312 N.C. at 290
 
 ,
 
 322 S.E.2d at 151
 
 ("If this question is answered in the negative, we need proceed no further. If it is answered affirmatively, the second inquiry is whether, under all the circumstances, the suggestive procedures employed gave rise to a substantial likelihood of irreparable misidentification." (citations omitted) ). The trial court concluded that the identification procedure was not impermissibly suggestive, as discussed above. Defendant is correct that the trial court need not have addressed the reliability of the identification under the totality of the circumstances, given its prior determination regarding the identification procedure, but the trial court did not err by ruling upon this issue. In addition, if the trial court did not in fact conclude that the identification procedure was not impermissibly suggestive, the trial court did not err in its alternative conclusion that the identification was reliable under the totality of the circumstances.
 

 While we recognize that it is the better practice to use multiple photos in a photo identification procedure, the trial court did not err in its conclusion that, in this case, the use of a single photo was not impermissibly suggestive. And even if the procedure was impermissibly suggestive, the trial court's findings of fact also support a conclusion that the procedure did not create "a substantial likelihood of irreparable misidentification." The trial court's findings of fact in this order are supported by competent evidence, and these factual findings support the trial court's ultimate conclusions of law.
 

 *349
 
 III. Expert Testimony
 

 Defendant argues that the trial court erred by allowing expert testimony on the weight and identification of the pills as oxycodone and the powder as heroin. Because the State's expert had an independent basis for her testimony, we find no error in allowing her to testify.
 

 Standard of Review
 

 Prior to trial, the State notified defendant it intended to call Knops to testify as to the weights and identification of the pills and powder. Defendant filed a motion
 
 in limine
 
 asking to exclude testimony from the State's expert, Knops, because the actual analysis of the pills and powder were done by another expert who has since moved out of state. The trial court denied defendant's motion
 
 in limine
 
 , and, at trial, he objected to the introduction of Knops's testimony regarding the brown powder, but failed to object to her testimony regarding the pills.
 

 "In order to preserve a question for appellate review, a party must have presented the trial court with a timely request, objection or motion, stating the specific grounds for the ruling sought if the specific grounds are not apparent."
 
 State v. Eason
 
 ,
 
 328 N.C. 409
 
 , 420,
 
 402 S.E.2d 809
 
 , 814 (1991) ;
 
 see also
 
 N.C. R. App. P. 10(a)(1). "In criminal cases, an issue that was not preserved by objection noted at trial and that is not deemed preserved by rule or law without any such action nevertheless may be made the basis of an issue presented on appeal when the judicial action questioned is specifically and distinctly contended to amount to plain error." N.C. R. App. P. 10(a)(4). Plain error arises when the error is "so basic, so prejudicial, so lacking in its elements that justice cannot have been done[.]"
 
 State v. Odom
 
 ,
 
 307 N.C. 655
 
 , 660,
 
 300 S.E.2d 375
 
 , 378 (1983) (citation omitted). "Under the plain error rule, defendant must convince this Court not only that there was error, but that absent the error, the jury probably would have reached a different result."
 
 State v. Jordan
 
 ,
 
 333 N.C. 431
 
 , 440,
 
 426 S.E.2d 692
 
 , 697 (1993).
 

 Analysis
 

 Our Supreme Court has stated that "when an expert gives an opinion, the expert is the witness whom the defendant has the right to confront. In such cases, the Confrontation Clause is satisfied if the defendant has the opportunity 'to fully cross-examine the
 
 *731
 
 expert witness who testifies against him[.]' "
 
 State v. Ortiz-Zape
 
 ,
 
 367 N.C. 1
 
 , 9,
 
 743 S.E.2d 156
 
 , 161 (2013) (citation and quotation marks omitted). Further, "the expert must present an independent opinion obtained through his or her own analysis and not merely 'surrogate testimony' parroting otherwise inadmissible
 
 *350
 
 statements."
 

 Id.
 

 (citing
 
 Bullcoming v. New Mexico
 
 ,
 
 564 U.S. 647
 
 , 652,
 
 131 S.Ct. 2705
 
 , 2710,
 
 180 L.Ed.2d 610
 
 (2011) ). However, "machine-generated raw data, if truly machine-generated, are not statements by a person, they are neither hearsay nor testimonial."
 
 Id.
 
 at 10,
 
 743 S.E.2d at 162
 
 (citation and quotation marks omitted).
 

 Here, Erica Lam performed the forensic chemistry analysis on the evidence purchased from Defendant. However, Lam moved out of state and was not available to testify at trial about the results of her chemical analysis. The State called Lori Knops, Lam's supervisor, to testify about the results of the tests on the evidence obtained from defendant. After
 
 voir dire
 
 on Knops's proposed testimony, the trial court concluded:
 

 In this matter, the Court does believe that scientific and technical and other specialized knowledge will assist the trier of fact in understanding the evidence in order to determine a fact in issue, that this witness is qualified as an expert by knowledge, skill, experience, training, and education. The Court does find that her testimony is based on sufficient facts or data, that her testimony is a product of reliable principles and methods, and the witness has applied the principles and methods reliable to the facts of this case, and so the Court therefore will allow her to testify as to her findings. Court will exclude the prior testimony of Ms. Lam as to the pills, but will allow this witness to testify as to her peer review and her findings based on the information of Ms. Lam.
 

 Knops was tendered as an expert in "forensic chemistry" without objection and testified about the procedure at the lab where she and Lams worked ("NMS"):
 

 Q Now, could you tell us, what is the process by which NMS Labs goes about determining whether something that is suspected of being a controlled substance is in fact a controlled substance?
 

 A A series of tests are conducted on the unknown substance. Essentially it's a two-part test. The first would be a preliminary or a presumptive test to essentially dictate what confirmatory test is used, and that is, the second part is to do a confirmatory test.
 

 Knops stated a peer review was performed on Lam's reports, and Knops personally reviewed the peer review. She stated that a peer review's
 
 *351
 
 purpose is to "look at the data that is produced and to formulate your opinion as to the result, and if that result matches the result that was produced by the working analyst." Defendant did not object to Knops's testimony regarding the substance of the pills. However, defendant did object to the identification of the heroin and the weight of the pills and the introduction of Knops's report, which contained in part:
 

 Case ID Numbers:
 

 16-WIN-019752 (Agency Number: 2012004651, Date of Offense: 09/07/2012)
 

 Name/DOB: Pless Jr. Harold Lee (09/30/1971)
 

 ... The case file for Laboratory Report, 16-WIN-019752 was reviewed by myself on July 24, 2017. I reviewed the analytical results of the above-listed Laboratory Reports and affirm the following:
 

 16-WIN-019752
 

 Lab Item #1 - Heroin, confirmed; 1 sample tested, Weight 0.45 g (+/- 0.01 g)
 

 Lab Item #2 - Acetaminophen and Oxycodone, confirmed; Weight 9.45 g (+/- 0.01 g); 1 sample tested, Weight 0. 52 g (+/- 0.01 g)
 

 a.
 
 Identity of the Substances
 

 The situation presented here as to Knops's testimony regarding State's Exhibits 3 and 4, identified as oxycodone and heroin, is identical to
 
 State v. Ortiz-Zape
 
 ,
 
 367 N.C. 1
 
 ,
 
 743 S.E.2d 156
 
 (2013).
 

 [Knops] analyzed the data pertaining to the seized substance[s] and gave her independent expert opinion that the substance was [heroin and Oxycodone]. Defendant had the opportunity to cross-examine the
 
 *732
 
 witness against him: [Knops]. The admission of an independent expert opinion based on the expert's own scientific analysis is not the type of evil the Confrontation Clause was designed to prevent.
 

 Id.
 
 at 14,
 
 743 S.E.2d at 165
 
 .
 

 Knops's opinion on the identity of the heroin and oxycodone resulted from her independent analysis of Lam's data:
 

 Q And did you review Ms. Lam's, the work product and the raw data that was generated relative to the testing of State's Exhibit 3?
 

 *352
 
 A I did.
 

 Q Based on your review of those items and your visual inspection of the tablets now, did you form an opinion satisfactory to yourself as to what those tablets are?
 

 A Yes, I did.
 

 Q What is it?
 

 A Acetiminophen [sic] and Oxycodone tablet.
 

 ....
 

 Q Based upon your review of, of the peer review, and of the analyses as noted in the data generated by NMS Labs and Ms. Lam, did you form an opinion satisfactory to yourself as to whether, as to what the identity of the substance is contained in State's Exhibit 4?
 

 A Yes, I did.
 

 Q What is it?
 

 [Defendant's Counsel]: Object.
 

 THE COURT: Overruled.
 

 A That State's Exhibit 4 is heroin.
 

 We find no error as to the identification of the oxycodone and the heroin.
 

 b.
 
 Weight of the Substances
 

 Knops was also questioned by the State about the weight of the pills:
 

 Q Now, does that [your report] reference the weight, the collective weight of all pills?
 

 A Yes, it does.
 

 Q Which is what?
 

 [Defendant's Counsel]: Object. This goes back to the earlier motion.
 

 THE COURT: Overruled.
 

 Q Go ahead.
 

 A The collective weight was 9.45 grams.
 

 Q Now, could you tell us, please, whether-you didn't yourself put them on a balance and weigh them yourself?
 

 A I did not.
 

 Q Based upon your review of the work product that was generated in the original analysis, and based upon your visual inspection of the pills, as you sit here right now, could you tell the jury whether you had an opinion
 
 *353
 
 satisfactory to yourself as to whether 9.45 grams was consistent with the weight of the pills as they appeared?
 

 A: It's consistent, yes.
 

 On cross-examination, defendant's counsel asked Ms. Knops about how she obtained the weight of the substances:
 

 Q And the same thing is true with the weight that was recorded for the heroin; is that right?
 

 A Yes. There wasn't any notes as to anyone observing her while she performed the test.
 

 Q And so the weight in your report for both the pills and the heroin was essentially repeated from Ms. Lam's report?
 

 A Yes.
 

 Q Is that correct?
 

 A Yes, it was from my review of her weights obtained on that balance tape.
 

 On redirect, Knops restated her opinion:
 

 My opinion is State's 3 contained acetiminophen [sic] and Oxycodone with a weight of the 9.45 grams. And by looking at the evidence here today and these tablets, that weight is consistent with what I am visually seeing right now.
 

 Because weight is machine generated, it is neither hearsay nor testimonial, and the trial court did not err by allowing Knops's testimony on the weight of the substances or her report to be admitted into evidence.
 
 See
 

 id.
 
 at 10,
 
 743 S.E.2d at 162
 
 ("[C]onsistent with the Confrontation Clause, if 'of a type reasonably relied upon by experts in the particular field,' N.C.R. Evid. 703, raw data generated by a machine may be admitted for the purpose of showing the basis of an expert's opinion."). Knops provided an independent
 
 *733
 
 basis for her opinion. The admission of Knops's testimony did not violate defendant's confrontation rights, so the trial court did not err by allowing this evidence.
 

 IV. Conclusion
 

 We affirm the trial court's denial of defendant's motion to suppress and hold that the trial court did not err by allowing Knops's testimony on the identification and weights of the substances or admitting Knops's report into evidence.
 

 *354
 
 AFFIRMED IN PART; NO ERROR IN PART.
 

 Judge ZACHARY concurs.
 

 Judge MURPHY concurs in the result by separate opinion.
 

 MURPHY, Judge, concurring in result by separate opinion.
 

 I concur with the Majority's analysis as to the motion to suppress, but concur in result only as to its analysis of Defendant's second argument, regarding expert testimony and the Confrontation Clause. Where a party fails to raise a constitutional issue at trial, such a challenge cannot ordinarily be considered for the first time on appeal.
 
 State v. Davis
 
 ,
 
 202 N.C. App. 490
 
 , 497,
 
 688 S.E.2d 829
 
 , 834 (2010). Here, Defendant did not raise a Confrontation Clause challenge at trial, so the issue is not properly before us on appeal.
 

 In
 
 Davis
 
 , we held:
 

 As Defendant failed to object at trial to any of the aforementioned testimony, Defendant failed to preserve for appeal the argument that the evidence was erroneously admitted.
 
 See
 
 N.C. R. App. P. 10(b)(1) ("In order to preserve a question for appellate review, a party must have presented to the trial court a timely ... objection ... stating the specific grounds for the ruling the party desired the court to make...."). "Moreover, because [D]efendant did not 'specifically and distinctly' allege plain error as required by North Carolina Rule of Appellate Procedure 10(c)(4), [D]efendant is not entitled to plain error review of this issue."
 
 State v. Dennison
 
 ,
 
 359 N.C. 312
 
 , 312-13,
 
 608 S.E.2d 756
 
 , 757 (2005) (citing N.C. R. App. P. 10(c)(4) ). Furthermore, "[a] constitutional issue not raised at trial will generally not be considered for the first time on appeal."
 
 Anderson v. Assimos
 
 ,
 
 356 N.C. 415
 
 , 416,
 
 572 S.E.2d 101
 
 , 102 (2002). While this Court may pass upon constitutional questions not properly raised at the trial level in the exercise of its supervisory jurisdiction "[t]o prevent manifest injustice[,]" N.C. R. App. P. 2, because there was copious unchallenged evidence before the jury that the substance at issue was cocaine, including ... unchallenged testimony, we decline to invoke Rule 2 in this case.
 

 *355
 

 Id.
 

 Our holding and analysis in
 
 Davis
 
 is indistinguishable from the instant case. Therefore, I would not reach the Defendant's argument regarding Ms. Knop's expert testimony. Consequently, I agree with the Majority's ultimate determination that Defendant received a fair trial, free from error, and concur in the mandate.
 

 [1]
 

 Defendant had a separate trial for drug charges related to an October 2012 traffic stop which he also appealed to this Court.
 
 State v. Pless
 
 , --- N.C. App. ----,
 
 817 S.E.2d 498
 
 (2018) (unpublished). In the 2017 trial related to defendant's October 2012 drug charges, Lam testified as an expert witness about oxycodone pills found on defendant.
 

 [2]
 

 See
 

 Barnette v. Lowe's Home Ctrs. Inc.
 
 ,
 
 247 N.C. App. 1
 
 , 6,
 
 785 S.E.2d 161
 
 , 165 (2016). Most of these are actually findings of fact although they are identified in the order as conclusions of law, but defendant does not challenge the factual portions of the conclusions of law. ("Regardless of how they may be labeled, we treat findings of fact as findings of fact and conclusions of law as conclusions of law for purposes of our review.").